UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF ILLINOIS,<br><br>Plaintiff,<br><br>v.<br><br>MIDWEST FAMILY MUTUAL INSURANCE CO., AND DOES I-X, INCLUSIVE; AND ROE CORPORATIONS I-X, INCLUSIVE<br><br>Defendants. | Case No. 2:22-cv-01133-ART-EJY<br><br>ORDER |

Plaintiff Safeco Insurance Company of Illinois (Safeco) brings this lawsuit against Defendant Midwest Family Mutual Insurance Company (MFMI) seeking equitable indemnity and/or subrogation for a payment of UIM (uninsured/underinsured motorist coverage) benefits to its insured, James Barton (Barton), that it claims MFMI was obligated to pay per the terms of the insurance policies. Before the Court are Defendant's Motion for Summary Judgment (ECF No. 9) and Plaintiff's Motion for Summary Judgment (ECF No. 14).

**I.   BACKGROUND**

This case concerns whether Safeco is entitled to recover its payment of UIM benefits from MFMI.

On March 7, 2019, Barton was involved in an automobile accident while operating a truck owned by TPM Services, LLC. (ECF No. 15 at 159-160.) Barton allegedly suffered medical damages and bills in excess of $420,000 and would require ongoing and future medical treatment in excess of $1,100,000. (ECF No. 1 at ¶ 11-12.) Safeco insured Barton with a policy providing UIM coverage up to

$250,000. (ECF No. 15 at 93.) MFMI insured TPM Services, LLC and provided up to $ 1 million in UIM coverage. (ECF No. 9 at 28.) Barton initially sought recovery from MFMI. After MFMI delayed payment, Barton eventually sought recovery from Safeco, which promptly paid him $250,000 (the policy limit) while reserving its rights against MFMI, which eventually paid Barton $750,000. (ECF Nos. 1 at 4-5; 9 at 78.) Safeco alleges that it had no duty to make the payment and seeks to recover the $250,000 that it paid Barton.

Beginning in April 2019, Barton sought to recover his UIM benefits from MFMI. On April 23, 2019, Barton first requested MFMI pay him his UIM benefits. (ECF No. 15 at 62.) On May 15, 2019, MFMI acknowledged its $1 million UIM policy limit and requested injury and treatment information. (*Id.* at 143.) On September 18, 2019, Barton informed MFMI that he was receiving continuing treatment due to the severity of his injuries and advised MFMI that he believed MFMI should set aside $750,000 to address his UIM claim. (*Id.* at 145.) On September 26, 2019, Barton provided MFMI with his medical records and a medical bill for $35,255. (*Id.* at 147-150.) On October 9, 2019, MFMI paid Barton $2,651.05 in med pay benefits and did not mention UIM benefits. (*Id.* at 152.) On May 5, 2020, MFMI requested a status update on Barton's treatment, and Barton informed MFMI that he was still receiving treatment. (*Id.* at 154.) On December 2, 2020, Barton requested a copy of his full policy. (*Id.* at 157.) On January 18, 2021, Barton sent a UIM benefit policy limit demand with an explanation of his expenses and requested MFMI respond by February 18, 2021, to confirm it would provide Barton with its full UIM policy limit of $1 million. (*Id.* at 76-82.) In this demand letter, Barton explained that his past medical expenses totaled $378,372.11 and his future medical expenses were projected to total $1,126,476.00. (*Id.* at 77.) On February 3, 2021, MFMI responded that it needed his medical records from the past three years "[d]ue to the severity of his injuries and injuries sustained in his 2001 accident[.]" (*Id.* at 162.) Barton replied on

February 3, 2021, and requested MFMI's basis for seeking this additional information per NRS 686A.310(1). (*Id.* at 164.) While MFMI never responded, on February 16, 2021, Barton provided the requested medical records. (*Id.* at 167.) On February 24, 2021, Barton informed MFMI that he was currently hospitalized for complications from surgery he had as a result of the accident and reiterated that he "hope[d] to have the policy limits tendered in the near future." (*Id.* at 172.)

Two full years after his initial request, MFMI was still evaluating Barton's claim. On March 22, 2021, MFMI explained that "[t]he prior records submitted are not sufficient enough to fully evaluate current injuries vs exacerbated injuries vs prior injuries." (*Id.* at 175.) MFMI requested all of Barton's prior medical records related to or since his 2001 accident. (*Id.*) On March 24, 2021, Barton again demanded MFMI tender its policy limit by April 15, 2021, or provide the actual evaluation at that time so he could determine whether he needed to file a lawsuit for breach of contract and bad faith. (*Id.* at 183.) He also reiterated that MFMI already had two surgeon reports confirming Barton needed surgery because of the accident but MFMI could not point to any evidence that the March 2019 accident and the surgeries were related. (*Id.*) That same day, Barton also sent a letter requesting MFMI specify any healthcare providers from which it sought records. (*Id.* at 181.) On March 29, 2021, Barton disputed the need for such extensive records because he had already provided medical information showing that he did not suffer from lower back issues in the years prior to the March 2019 crash and demanded a copy of all reports from every review of the medical records to date. (*Id.* at 177.) On April 2, 2021, MFMI replied that it had only become aware of Barton's 2001 accident after reviewing the medical record and asserted that the record indicated Barton suffered from chronic lumbar pain since the 2001 accident and thus it needed the additionally requested records to evaluate his claim. (*Id.* at 189-192.) In its deposition, MFMI admitted that, by July 12, 2021, it could not determine whether Barton had even one dollar of

damages from the March 2019 accident. (*Id.* at 14.) MFMI also stated that at that point it had never engaged with any medical experts to analyze the accuracy of the projected future medical expenses or had found any records indicating that Barton's current issues were related to the 2001 accident. (*Id.* at 14, 16, 19-20.)

In March 2021, Barton demanded payment from Safeco, which promptly responded. Barton first sent a letter to Safeco on March 23, 2021. (*Id.* at 194.) Safeco acknowledged receipt the following day and followed up on March 26, 2021, to identify the claim professional handling the case. (*Id.* at 196, 200.) By April 1, 2021, Safeco requested Barton provide an interview and statement, declaration pages, estimates of damages, the police report, and a copy of the demand letter sent to MFMI. (*Id.* at 202-210.) On April 19, 2021, Barton sent Safeco a UIM benefit policy limit demand letter which indicated that Barton's past medical expenses totaled $423,254.11 and that his projected future medical expenses were $1,126,476. (*Id.* at 64-71.) On May 4, 2021, Safeco sent Barton a reservation of rights explaining that Safeco was an excess insurer because Barton was driving a vehicle he did now own and that Safeco had no payment obligation because Barton could only recover the highest applicable limit, which was the MFMI policy. (*Id.* at 211-213.) That same day, Safeco requested Barton give it an extension to review the MFMI policies because it had just received the MFMI adjuster's contact information. (*Id.* at 215.) Safeco also requested five years of medical history. (*Id.*) On May 6, 2021, Safeco reached out to MFMI to request the declarations page of its policy or written confirmation of the UIM benefits. (*Id.* at 218.) The internal email chain showed that on March 30, 2021, the assigned claim professional at MFMI still had not received or reviewed the policy's UIM language. (*Id.* at 222.) On May 18, 2021, Safeco requested MFMI confirm it was the primary insurer for UIM benefits and that Safeco was an excess insurer; that same day, MFMI replied that it was the primary insurer. (*Id.* at 5-11.)

On May 28, 2021, Barton made a joint demand for payment to both Safeco and MFMI. (*Id.* at 73-74.) He accused the insurance companies of serious delay, wrongfully denying payment, and failing to cooperate and threatened to bring litigation alleging breach of contract and bad faith denial of benefits. (*Id.*) On June 11, 2021, Safeco requested MFMI provide all communications between Barton and MFMI and asserted that MFMI was responsible for paying the entirety of its UIM benefits or Safeco would seek recovery for any payment it was forced to make. (*Id.* at 228-231.) On June 11, 2021, Safeco paid its policy limit of $250,000 and in November 2021, MFMI paid $750,000 to Barton. (ECF Nos. 1 at 4-5; 9 at 78.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden

1 shifts to the non-moving party to "set forth specific facts showing that there is a
2 genuine issue for trial." *Anderson,* 477 U.S. at 256. The nonmoving party "may
3 not rely on denials in the pleadings but must produce specific evidence, through
4 affidavits or admissible discovery material, to show that the dispute exists[.]"
5 *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

**III.   DISCUSSION**

   **A.   Priority of Insurers**

The parties dispute whether Safeco had an independent duty to pay UIM benefits to Barton, or if MFMI was fully responsible for paying Barton based on the companies' "other insurance" clauses. The Court finds that 1) the "other insurance" clauses do not conflict, as each capped Barton's recovery to the highest applicable limit and 2) Safeco was an excess insurer based on its "other insurance" clause. As a result, Barton was entitled to recover $1 million (MFMI's policy limit, which was the higher policy limit), and MFMI was responsible for paying the entire benefits, not a pro-rata amount.

   **a.   "Other Insurance" Clauses**

As an initial matter, parties do not dispute that both companies' "other insurance" clauses cap the insured's potential recovery to the greater of the two policy limits. The Safeco policy states that "[i]f there is other applicable insurance available…[a]ny recovery for damage under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis." (ECF No. 15 at 124.) Similarly, MFMI's "other insurance" clause says that "[t]he maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limits for any one vehicle under any coverage forms or policy providing coverage on either a primary or excess basis." (*Id.* at 86.) Thus, Barton was clearly entitled to recover the greater of the two policies. Here, Safeco's policy limit was $250,000; MFMI's limit was $1 million. (ECF Nos.

9 at 28; 15 at 93.) As a result, the insurers were responsible for paying Barton up to $1 million.

### b. Primary and Excess Insurance

While the parties agree that the "other insurance" clauses cap Barton's total recovery to $1 million, they disagree about whether Safeco's "other insurance" clause makes it an excess insurer. Safeco's "other insurance" clause includes a provision stating that "[a]ny insurance we provide with respect to a vehicle you do not own, shall be excess over any collectible insurance." (ECF No. 15 at 124.) Because the parties do not dispute that Barton was driving a truck owned by TPM Services, Inc. and insured by MFMI (ECF No. 9 at 3, 29), Safeco asserts that MFMI had the primary payment obligation and it "only had a potential contingent, excess payment obligation[.]" (ECF No. 14 at 3.) MFMI responds that Safeco was not a "true" excess insurer because it issued a primary insurance policy with an "other insurance" clause, so Safeco still owed Barton a primary obligation to satisfy Barton's UIM claims along with MFMI as co-insurers. (*Id.* at 11-14.) MFMI testified that it reduced its payment to Barton from $1 million to $750,000 based on the "other insurance" clauses capping Barton's total recovery to $1 million and the fact that Safeco had already paid $250,000. (ECF No. 15 at 13.)

Safeco's policy was excess to the MFMI policy. While MFMI argues that Safeco is not a true excess insurer and that Safeco provided a "coincidental" excess policy (a primary policy also operating as excess because of its "other insurance" clause), this distinction is neither relevant nor convincing. The only binding precedent that MFMI cites in support of this distinction is *AMHS Ins. Co. v. Mut. Ins. Co.*, 258 F.3d 1090 (9th Cir. 2001), which considered whether a policy is a "true" excess carrier under Arizona law. *AMHS Ins. Co.* addressed a different situation in which the primary insurer was clear and the issue was the relative positions of two different insurance policies, both of which included "other

7

insurance" clauses that made them excess to the primary insurance. *Id.* at 1095. Here, by contrast, MFMI's policy also clearly provides that it is an excess insurer if the insured did not own the vehicle. (ECF No. 15 at 86.)("Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.") That "excess" provision did not apply because it is undisputed that MFMI's insured, TPM Services, Inc., owned the car Barton drove. (ECF No. 9 at 3, 29.) Thus, MFMI provided primary coverage with no relevant excess coverage provision and Safeco's "other insurance" clause made it an excess insurer to MFMI.

      c. Lamb-Weston Rule

MFMI argues that the policies' "other insurance" clauses are mutually repugnant, necessitating the Court to apply the Lamb-Weston rule and find the insurance obligations should be pro-rated according to the policies' limits. In *Travelers Insurance Co. v. Lopez*, 567 P.2d 471, 474 (Nev. 1977), the Nevada Supreme Court adopted the Lamb-Weston rule, originating in the Oregon Supreme Court case *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.*, 341 P.2d 110 (1959), which holds that "the 'other insurance' clause contained in one policy of insurance [is] null and void when it conflicts with a similar clause contained in another policy of insurance." *Travelers Ins. Co.*, 567 P.2d at 474. In *Alamo Rent-A-Car v. State Farm Mut. Auto. Ins. Co.*, 953 P.2d 1074 (Nev. 1998), the Nevada Supreme Court clarified that, under the Lamb-Weston rule, "[m]utually repugnant escape, excess, or pro-rata clauses [are] disregarded and losses [are] pro-rated according to the limits of both policies." *Alamo Rent-A-Car v. State Farm Mut. Auto. Ins. Co.*, 953 P.2d 1074, 1076 (Nev. 1998).

The Court finds that the Lamb-Weston rule does not apply in the given case because the policies do not conflict. MFMI asserts that the policies conflict because the MFMI policy states that "[o]n a primary basis, we will pay only our

8

share of the loss that must be paid under insurance providing coverage on a primary basis." (ECF No. 15 at 86.) The policy declares that "[o]ur share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis." (*Id.*) However, this does not conflict with Safeco's other insurance clause because Safeco's policy states that when the insured is not driving a vehicle they own, then Safeco is an excess insurer (ECF No. 15 at 124), and the cited MFMI policy provision only requires pro-rata payments amongst primary insurers.

MFMI's citation to Ninth Circuit caselaw, *Port of Portland v. Water Quality Ins. Syndicate*, 796 F.2d 1188 (9th Cir. 1986), is unhelpful. In *Port of Portland*, the court, applying Oregon law, upheld the district court's application of the Lamb-Weston rule when one insurer had a provision making it an excess insurer to other insurance, which in that case included a provision requiring co-existing insurers to pay their pro-rated share of the insured's benefits. *Port of Portland*, 796 F.2d at 1193. That case is distinguishable in a number of ways, but most importantly because Safeco's policy is excess if the insured does not own the vehicle, a provision that MFMI includes in its own policy. As a result, the Court will not apply the Lamb-Weston rule.

**B.  Equitable Indemnification**

Having found that the insurance policies do not conflict and that MFMI was a primary insurer while Safeco was an excess insurer, the Court must now consider whether Safeco is entitled to its requested relief of equitable indemnification.

"[E]quitable indemnity is a judicially-created construct to avoid unjust enrichment." *Medallion Dev. v. Converse Consultants*, 930 P.2d 115, 119 (Nev. 1997), superseded by statute on other grounds as stated in *Doctors Co. v. Vincent*, 98 P.3d 681, 688 (Nev. 2004). Equitable indemnification "has been developed by the courts to address the unfairness which results when one party, who has

committed no independent wrong, is held liable for the loss of a plaintiff caused by another party." *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 801 (Nev. 2009). "A claimant seeking equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter." *Id.* In addition, Nevada law requires "some nexus or relationship between the indemnitee and indemnitor." *Id.* at 802 (citing *Piedmont Equip. Co. v. Eberhard Mfg.*, 665 P.2d 256, 258 (Nev. 1983)).

Safeco has established that it is entitled to equitable indemnification. First, Safeco discharged a legal obligation owed to a third party. Here, Safeco paid $250,000 to Barton which MFMI was obligated to pay as part of its UIM coverage. MFMI argues that Safeco had an independent duty to Barton, so its payment only relieved its own legal obligation. (ECF No. 16 at 16.) However, as previously discussed, because MFMI was the primary insurer, it was responsible for paying up to its policy limit, which was $ 1 million. It was not entitled to reduce its UIM benefits by $250,000 because Safeco paid first to avoid a lawsuit. Safeco meets the second criteria because neither party disputes that MFMI was also liable to Barton. Safeco also meets the third criteria because, as a matter of equity, MFMI should have paid the $250,000 since it was the primary insurer and Safeco was only an excess carrier per the terms of its policy.

MFMI's actions in response to Barton's request for benefits further justifies equitable indemnification. Barton first requested payment from MFMI in April 2019. (ECF No. 15 at 62.) By July of 2021, MFMI still was unable to determine whether Barton had incurred any damages despite Barton having undergone two lumbar spine fusion reconstruction surgeries and MedTrak projecting Barton's future care to cost $1,036,776, already more than MFMI's policy limit. (*Id.* at 14-17.) MFMI claims that it needed additional information from Barton to evaluate

his claims, but it also admitted in its testimony that it had never hired any experts or consultants to analyze the accuracy of the MedTrak projection nor could it identify any information that disputed the Medtrak projection. (*Id.* at 17.) While MFMI suggests that Barton's complaints may have been tied to a prior accident, it fails to cite to any medical records to support this theory. (*Id.* at 25.) Despite having three years of Barton's medical records which did not indicate ongoing conditions from his prior 2001 accident and having not engaged with any expert, on March 22, 2021, MFMI requested twenty years of medical records. (*Id.* at 175.) In contrast, Barton first demanded payment from Safeco on or about March 23, 2021, and Safeco ultimately paid its policy limit of $250,000 before MFMI had completed its evaluation of Barton's claim. (ECF No. 1 at 4-5, 15 at 194.) Thus, Safeco's prompt resolution of Barton's claims provides further support for finding MFMI should indemnify Safeco.

The Court further finds that Safeco and MFMI had a sufficient relationship to permit equitable relief. The Nevada Supreme Court has recognized the availability of equitable subrogation and similar relief. *See* AT & T Technologies, Inc. v. Reid, 855 P.2d 533, 535 (Nev. 1993). "Generally, subrogation is an equitable doctrine created to 'accomplish what is just and fair as between the parties.' It arises when one party has been compelled to satisfy an obligation that is ultimately determined to be the obligation of another." *Id.* (internal citations omitted). In Nevada, "equitable subrogation is available as a claim for equitable relief where contractual subrogation is unavailable, and where not precluded by a statutory scheme." *Colony Ins. Co. v. Colorado Cas. Ins.*, No. 2:12-cv-01727-RFB-NJK, 2018 WL 3312965, at *5 (D. Nev. July 5, 2018). In *Colony*, the district court, following a bench trial, granted judgment in favor of a plaintiff excess insurer against a primary insurer carrier to recover costs incurred as a result of the primary insurer's delay in settling and refusal to do any substantive investigation. *Id.* at *5-7. In *Colony*, the excess insurer was forced to pay the

insured due to the primary insurer's conduct. Because Safeco was an excess insurer similarly forced to make a payment due to MFMI's (the primary insurer's) conduct, Safeco is also entitled to equitable relief.

MFMI's attempts to distinguish this case from *Colony* are unpersuasive. MFMI argues that Safeco cannot rely on *Colony* because that case involved a "true" excess carrier. (ECF No. 16 at 13.) The Court has already rejected this proposition because Safeco was clearly excess to MFMI and that MFMI was responsible for paying its full policy limit of $ 1 million. Thus, *Colony,* though not binding, is applicable and the Court will grant Plaintiff's Motion for Summary Judgment.

### C. Equitable Subrogation

Since the Court has already found that Safeco is entitled to equitable indemnification, it will not discuss its alternative requested form of relief of equitable subrogation.

### IV. CONCLUSION

It is therefore ordered that Defendant's Motion for Summary Judgment (ECF No. 9) is denied.

It is further ordered that Plaintiff's Motion for Summary Judgment (ECF No. 14) is granted.

It is further ordered that the Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 22nd Day of March 2024.

_____
ANNE TRAUM
UNITED STATES DISTRICT JUDGE